UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
GABRIEL RUIZ-DIAZ, *et al.*,
                Plaintiffs,
    v.
UNITED STATES OF AMERICA, *et al.*,
                Defendants.
_____

No. C07-1881RSL

ORDER DENYING DEFENDANTS'
SECOND MOTION TO DISMISS

This matter comes before the Court on defendants' second motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Dkt. # 86. Defendants argue that the Court lacks subject matter jurisdiction over plaintiffs' claims and that plaintiffs have failed to state a claim for which relief can be granted. Having reviewed the memoranda and declaration submitted by the parties and heard the arguments of counsel, the Court finds as follows:

**A. STANDING AND MOOTNESS**

Defendants argue that all of the named plaintiffs except Yuriy Kasyanov lack standing because they have not suffered, and are not threatened with, actual harm.[1] After this

---

[1] It is not clear why defendants singled out Yuriy Kasyanov for special mention. He is not mentioned in the argument and his situation appears to be similar to, if not indistinguishable from, some of the other individual plaintiffs.

ORDER DENYING DEFENDANTS'
SECOND MOTION TO DISMISS

class action litigation was initiated on behalf of the named plaintiffs, the United States Citizenship and Immigration Services ("CIS") ruled on the I-360 petitions filed by the religious organizations who employ nine of the individuals identified in the Second Amended Complaint. When Gabriel Ruiz-Diaz, Cindy Lee Marsh, Peter Gillette, and Saleck Ould Dah Ould Sindine resubmitted their I-485 applications for adjustment of status under Immigration and Nationality Act ("INA") § 245, 8 U.S.C. § 1255, CIS accepted them pursuant to its existing policy. These four individuals are no longer in danger of accruing unlawful presence time. The I-360 petitions filed on behalf of Lelia Tenreyro-Viana, Edgardo Gaston Romero Lacuesta, Youn Su Nam, and Harold Michael Carl Lapian were approved after they were named as plaintiffs in this case. Plaintiffs Pablo Sandoval, Yuriy Kasyanov, and Rosario Razo Romero are still waiting for the adjudication of their I-360 petitions. The I-360 petition filed on behalf of plaintiff Hyun Sook Song was rejected, making her ineligible for adjustment of status.

Although defendants present alternative arguments on the grounds of standing and mootness, they have not attempted to show that any of the individual plaintiffs lacked standing at the time they were joined as plaintiffs in this action. The real issue, therefore, is whether some or all of plaintiffs' claims became moot when CIS subsequently adjudicated the I-360 petitions filed on behalf of some of the named plaintiffs. As was the case when defendants' filed their original motion to dismiss, defendants have not reconsidered or altered the policy challenged by plaintiffs and have made no attempt to remedy the impacts of the discrimination and constitutional violations that allegedly occurred when plaintiffs' I-485 applications were rejected without consideration. For the reasons stated in the "Order Denying Defendants' Motion to Dismiss" (Dkt. # 46 at 2-5), the claims of the individual plaintiffs are not moot.

Defendants also argue that the three religious organizations identified as plaintiffs in the Second Amended Complaint lack standing because they are not included in the class definition, they may not file an I-485 application for themselves or on their employee's behalf,

and they do not risk accruing unlawful presence or unlawful employment time. Motion at 6. The fact that the organizational plaintiffs are not members of the class is irrelevant: these entities seek relief on their own behalf for harms caused or threatened by defendants' policy. The Court already determined that the religious organizations have standing when it allowed plaintiffs to file their Second Amended Complaint. See Dkt. # 50 at 2-3. Defendants' motion to dismiss offers no new arguments and is an untimely request for reconsideration.

**B. SUBJECT MATTER JURISDICTION PURSUANT TO 8 U.S.C. § 1252(a)(2)(B)(I) and (ii)**

Defendants argue that dismissal is appropriate because the Court lacks jurisdiction to review defendants' discretionary determination. This issue has already been resolved. See Dkt. # 46 at 5. Defendants offer no new arguments in support of what is essentially an untimely request for reconsideration.

**C. SUBJECT MATTER JURISDICTION PURSUANT TO THE ADMINISTRATIVE PROCEDURES ACT**

Defendants argue that, because plaintiffs are challenging a decision that is committed to agency discretion, judicial review is precluded under the Administrative Procedures Act. As noted in the "Order Denying Defendants' Motion to Dismiss" (Dkt. # 46 at 5), whether an alien is statutorily eligible for adjustment of status is not left to agency discretion. Defendants' conclusion that plaintiffs cannot apply for adjustment of status until their I-360 petitions are granted can be judged against meaningful standards, namely the governing statute and constitutional guarantees.[2]

---

[2] Defendants also argue that the Court "owes substantial deference to the Attorney General's permissible interpretations of the immigration statute and regulations." Motion at 8. The fact that the Court may ultimately defer to the agency's interpretation of the governing law does not deprive the Court of jurisdiction to hear this matter.

ORDER DENYING DEFENDANTS'
SECOND MOTION TO DISMISS         -3-

## D. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). When determining whether the allegations contained therein state a claim upon which relief can be granted, the allegations are accepted as true and construed in the light most favorable to plaintiff. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). No claim should be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief should be dismissed. Wyler Summit Partnership v. Turner Broadcasting Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).

### 1. Immigration and Nationality Act ("INA") Claims

The individual plaintiffs allege that they were statutorily eligible to file applications for adjustment of status, but that their applications were rejected in violation of the INA § 245, 8 U.S.C. § 1255. Section 245(a) states in relevant part:

> The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). Defendants argue that plaintiffs have no statutory right to concurrently file I-360 petitions and I-485 applications and that 8 C.F.R. § 245.2(a)(2)(i)(B), which permits some aliens to file concurrently while requiring others, including religious workers, to wait until CIS has approved the employer's visa petition, is a permissible interpretation of the immigration

statute.³

An alien may apply for adjustment of status if "an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a)(2). There are at least two possible interpretations of this requirement. The most plausible meaning is that the Department of State must have an immigrant visa number available for distribution on the date the I-485 application is filed. One could also interpret this requirement to mean that the alien must be eligible for immediate assignment of an immigrant visa number, meaning that the visa petition filed on the alien's behalf has already been approved and the government simply needs to process the I-485 application. This interpretation is less plausible, however, because another subsection of § 1255(a) states that the alien simply has to be "eligible to receive an immigrant visa" in order to file an application.

Defendants have adopted neither of these interpretations. Instead, defendants issued regulations defining "immediately available" differently depending on the classification of the alien. If an alien is a priority worker under 8 U.S.C. § 1153(b)(1), for example, the visa will be deemed "immediately available" if the State Department still has numbers available and a visa petition has been filed. Visas are not "immediately available" for religious workers under 8 U.S.C. § 1153(b)(4), however, until CIS has actually approved the visa petition. 8 C.F.R. § 245.2(a)(2)(i)(B). Defendants did not choose between the possible interpretations of the statute: they simply defined "immediately available" in multiple ways so that the statute affects different groups of aliens differently. Even if the agency's interpretation of the immigration statute is entitled to deference, defendants have not interpreted the statute so much as rewritten it. Because there is no canon of statutory construction that allows the same language in the same

---

³ To the extent defendants are again arguing that plaintiffs seek to have their adjustment of status applications favorably adjudicated, they are mischaracterizing plaintiffs' claims. See Order Denying Defendants' Motion to Dismiss (Dkt. # 46 at 5 n.2).

ORDER DENYING DEFENDANTS'
SECOND MOTION TO DISMISS                -5-

statutory provision to have two conflicting meanings, the Court finds that the interpretation set forth in 8 C.F.R. § 245.2(a)(2)(i)(B) is not permissible. INS v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999) (where deference is appropriate, the question for the court is whether the agency's interpretation "is based on a permissible construction of the statute") (quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)). Because plaintiffs may be able to show that defendants' policy against concurrent filing for religious workers violates the INA, dismissal under Rule 12(b)(6) is not appropriate.[4]

### 2. Due Process Claims

Plaintiffs allege that CIS's refusal to accept applications for adjustment of status from statutorily eligible class members is a violation of the Due Process Clause of the United States Constitution. Second Amended Complaint at ¶ 59. Defendants argue, however, that because plaintiffs have no life, liberty, or property interest in the outcome of the proceedings, no process is due.[5] Defendants rely almost exclusively on Supreme Court authority developed in the prison context (see Ohio Adult Parole Auth. v. Woodard, 532 U.S. 272, 280-81 (1998); Olim v. Wakinekona, 461 U.S. 238, 249-51 (1983)) and Seventh Circuit cases (Cevilla v. Gonzales, 446 F.3d 658, 662 (7th Cir. 2006); Hamdan v. Gonzales, 425 F.3d 1051, 1060-61 (7th Cir. 2005)). The Supreme Court has placed a high hurdle in front of inmates who seek to challenge inter-prison transfers, clemency determinations, and other discretionary decisions involving prisons. If the governing law imposes no substantive limitations on official discretion when

---

[4] Only the individual plaintiffs and the absent class members have asserted claims under the INA. See Second Amended Complaint at ¶ 59.

[5] Defendants also challenge plaintiffs' assertion that they are statutorily eligible to apply for adjustment of status. Reply at 2-3. Defendants offer no facts or legal analysis: they simply point out that plaintiffs are not eligible for concurrent filing under defendants' policies. As discussed in Section D.1. of this Order, plaintiffs may be able to show that 8 C.F.R. § 245.2(a)(2)(i)(B) is inconsistent with the governing statute and that they are, in fact, eligible to apply under 8 U.S.C. § 1255(a).

ORDER DENYING DEFENDANTS'
SECOND MOTION TO DISMISS           -6-

making these types of decisions, the Supreme Court concludes that the inmate does not have a protected liberty or property interest in the relief sought and that the due process clause does not apply to the procedures used to make the decision. Even where the inmate could cite to a prison regulation that required a particular type of hearing before he could be transferred, the Court reasoned that, although the state chose to afford process, it was not constitutionally mandated because the inmate did not have a legitimate claim of entitlement to the underlying benefit. Olim, 461 U.S. at 250-51.

It is not clear whether the "discretionary relief" analysis applies outside the prison context. The Seventh Circuit, citing Olim, has concluded that an alien's right to due process in the immigration context is not implicated if the relief sought is discretionary. See, e.g., Cevilla, 446 F.3d at 662; but see Podio v. INS, 153 F.3d 506, 509 (7th Cir. 1998) (holding that alien's due process right to a full and fair hearing on his asylum application was violated). The Ninth Circuit generally starts its analysis with the proposition that the guarantee of due process applies to removal proceedings: whether the relief sought is within the official's discretion is not considered, much less deemed dispositive. See, e.g., Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir. 2004) (application for asylum); Agyeman v. INS, 296 F.3d 871, 876-77 (9th Cir. 2002) (application for suspension of deportation). The Court need not resolve this apparent conflict in the case law because the benefit plaintiffs' seek, namely the right to file an I-485 application, is not discretionary.

By enacting 8 U.S.C. § 1255(a), Congress has identified a class of aliens that is eligible for adjustment of status. Plaintiffs allege, with some support, that they satisfy the eligibility requirements and therefore have a legitimate claim of entitlement to the benefit of applying. In Olim (and some of the other cases cited by defendants), filing an application for clemency, as opposed to obtaining clemency, conferred no benefit on plaintiff. In the circumstances of this case, however, there mere act of applying or, more accurately, of having

ORDER DENYING DEFENDANTS'
SECOND MOTION TO DISMISS                -7-

your application accepted and pending, is of value to the alien. A pending I-485 application allows an alien to remain in the United States without accruing unlawful presence time and to file an application for employment authorization. Motion at 2. Assuming that plaintiffs were statutorily eligible to apply for an adjustment of status, defendants' rejection of their applications deprived plaintiffs of benefits to which they had a reasonable expectation of entitlement. Defendants' motion to dismiss the class members' due process claim is therefore denied.

### 3. Religious Organization Claims

As noted above, the Court has already determined that the religious organizations assert injuries which, if proven, could be redressed in this action. Defendants argue that, because the religious organizations were aware of the limitations of the R-1 visa program when they hired religious workers, they cannot assert a claim for injuries caused by the bar against concurrent filing. No authority is provided in support of this argument. If, as plaintiffs allege, the bar violates the INA, is unconstitutional, and discriminates based on religion, it is hard to imagine how plaintiffs' awareness of defendants' policy immunizes it from challenge. The potential loss of a valued employee through the operation of an unlawful government policy is a cognizable injury properly asserted in this litigation.[6]

### 4. Religious Freedom Restoration Act Claims

Defendants again argued that the Religious Freedom Restoration Act ("RFRA") does not apply to this case because plaintiffs' exercise of religion was not substantially burdened by the bar on concurrent filings. Dkt. # 26 at 20; Motion at 17. The Court has already determined that the class members' allegations, if proven, could support a finding that

---

[6] In their reply, defendants argue that the religious organizations "cannot and do not present any evidence or point to any proof to support their" allegations of harm. Reply at 4. In the context of a motion to dismiss, the Court's review is generally limited to the allegations of the complaint: plaintiffs need not prove their allegations of harm at this stage of the proceeding.

ORDER DENYING DEFENDANTS'
SECOND MOTION TO DISMISS -8-

defendants' policy substantially burdens plaintiffs' exercise of religion by threatening to separate them from the religious communities they serve and by interfering with their religious ministries. Dkt. # 46 at 6. Defendants rely upon Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058 (9th Cir. 2008), as support for what is essentially an untimely request for reconsideration. Navajo Nation recognizes a "substantial burden on the exercise of religion only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." 535 F.3d at 1075 n.18 (internal citations omitted). As plaintiffs pointed out at oral argument, the government's policies interfere with the individual plaintiffs' ability to minister to their religious communities: both the religious organization and the individual plaintiffs face civil and criminal sanctions if they continue to serve. The Court finds no reason to reconsider its prior ruling on this issue.

Defendants also challenge the viability of the religious organizations' RFRA claim. These organizations allege that defendants' policy against concurrent filings prevents valuable employees from continuing to work and threatens the organization's ability to provide spiritual guidance to adherents. Second Amended Complaint at ¶¶ 50-52. Assuming, for purposes of this motion, that the workers who are impacted by defendants' policy are important to the religious services provided by the organizations, these plaintiffs may be able to show that 8 C.F.R. § 245.2(a)(2)(i)(B) substantially burdens their exercise of religion.

**5. Equal Protection Claims**

Plaintiffs allege that they have been treated differently from other immigrant groups because they work for religious, rather than secular, organizations. Defendants acknowledge that regulations discriminating against an individual based on his or her religion are subject to strict scrutiny. Motion at 17. They argue, however, that 8 C.F.R. § 245.2(a)(2)(i)(B) does not penalize plaintiffs because of their religious affiliation, pointing out

that other non-religious classes of aliens, such as international broadcasters and Afghan translators, are also precluded from filing concurrently.  Defendants offer no case law or analysis regarding the constitutionality of restrictions that discriminate against both suspect and non-suspect classes.  It is clear, however, that the Agency's regulations adversely affect a suspect class, along with others, and has the potential to interfere with a fundamental right.  See Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 457-58 (1988).  Based on the existing record and the limited legal authority cited by the parties, the Court is unable to conclude that the allegations of the complaint, if proven, would not entitle plaintiffs to relief on their equal protection claim.

### 6. First Amendment Claims

The First Amendment bars Congress from making any law prohibiting the free exercise of religion.  Defendants argue that Locke v. Davey, 540 U.S. 712, 718-21 (2004), undermines plaintiffs' claim that their inability to concurrently file burdens their exercise of religion.  In Locke, the Supreme Court found that a ban on using taxpayer money to obtain a divinity degree did not violate the free exercise clause because the law was not designed to suppress religion as much as to avoid the establishment of religion.  The Court noted that the ban on funding imposed no sanctions on those seeking divinity degrees, did not exclude ministers from the political affairs of the community, and did not require students to choose between their religious beliefs and receiving a government benefit.  After reviewing the state scholarship program as a whole, the Supreme Court found nothing to suggest an animus toward religion.

The relevance of Locke is not readily apparent.  As the Supreme Court noted, the government regulation at issue in Locke fell within the "joint" between the Establishment Clause and the Free Exercise Clause.  How big that joint is and where this case lies have not been analyzed by the parties.  In both cases, a government benefit was offered to certain groups.  In

Locke, the benefit was forfeited when the recipient tried to use it to obtain religious instruction. In the case at hand, certain individuals were precluded from applying for the benefit because of their religious affiliation. Unlike the ban on funding religious instruction, the record currently before the Court suggests that the bar against concurrent filing triggers legal sanctions for both the employee and the employer and may ultimately result in the exclusion of religious workers from their religious community. Preaching and proselytizing constitute religious activity protected by the Free Exercise Clause (see McDaniel v. Paty, 435 U.S. 618, 631 n.3 (1978)), and plaintiffs may be able to show that the regulatory distinction at issue in this case reflects animus toward religion. Absent further briefing and analysis by the parties, the Court cannot say that plaintiffs will be unable to prove any set of facts which would entitle them to relief under their First Amendment claim.

For all of the foregoing reasons, defendants' second motion to dismiss is DENIED.

Dated this 31st day of October, 2008.

*signature*

Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANTS'
SECOND MOTION TO DISMISS            -11-