1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                          )
GABRIEL RUIZ-DIAZ, *et al.*,                 )
                                                          )          No. C07-1881RSL
                          Plaintiffs,           )
                                                          )          ORDER GRANTING DEFENDANTS'
            v.                                        )          MOTION FOR SUMMARY JUDGMENT
                                                          )
UNITED STATES OF AMERICA,         )
*et al.*,                                               )
                                                          )
                          Defendants.          )
_____ )

            This matter comes before the Court on "Plaintiffs' Motion for Summary

Judgment" (Dkt. # 141) and defendants' "Cross-Motion for Summary Judgment" (Dkt. # 145).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court

finds as follows:

## BACKGROUND

            Plaintiffs represent a class of aliens holding special immigrant religious worker

visas.  This type of visa is for foreign ministers and other religious workers and allows them to

stay in the United States for a maximum of five years.  When the five-year period expires, the

alien must either depart or seek to adjust his status to that of a lawful permanent resident.

Failure to do one of these two things will make the alien's presence in the United States

unlawful.  If the alien overstays his visa by 180 days or more without having an adjustment of

status application pending before the United States Citizenship and Immigration Service

1 ("CIS"), he will be subject to significant statutory penalties.

2          Adjusting one's status to that of a lawful permanent resident is a two-step process.

3 The organization that employs the alien must file a Form I-360 visa petition on behalf of the

4 alien.  In addition, the alien must file a Form I-485 application for adjustment of status.  The

5 order in which these filings may be made has changed over the years and now depends on the

6 category of alien at issue.  Prior to 1991, all aliens seeking adjustment of status were permitted

7 to file their application for adjustment of status concurrently with their employer's visa petition.

8 Between 1991 and 2002, the agency changed the process, such that the employer's visa petition

9 had to be approved by the agency before the alien could submit an application for adjustment of

10 status.  In an effort to make the process more efficient and to improve customer service, the

11 governing regulations were again changed in 2002 to allow alien workers in the first three

12 employment-based preference categories to file their visa petitions and adjustment of status

13 applications concurrently.  8 C.F.R. § 245.2(a)(2)(i)(B).  Special immigrant visa holders,

14 including religious workers, were, and still are, excluded from concurrent filing.  Thus, members

15 of the plaintiff class may file a Form I-485 application to adjust status only after CIS has

16 approved their employers' Form I-360 petition.

17          The date on which an alien is eligible to apply for adjustment of status is not

18 immaterial.  Failure to have an application pending before CIS[1] before the original five-year visa

19 period expires triggers the accrual of unlawful presence time.  Every day of unlawful presence

20 reduces the 180-day grace period Congress provided for this class of alien and increases the

21 possibility that the alien or his family members will be detained and/or deported for being out of

22 status.  If CIS delays processing the employer's visa petition long enough, the religious worker

23 must depart from the United States and may lose the opportunity to file an application for

24 _____

25          [1]  If an alien attempts to file a Form I-485 before obtaining approval of the employer's visa
   petition, CIS rejects the application.

26 ORDER GRANTING DEFENDANTS'
   MOTION FOR SUMMARY JUDGMENT – 2

1   adjustment of status.  8 C.F.R. § 245.1(a) (right to apply for adjustment of status is limited to
2   aliens who are physically present in the United States).  If the alien remains in the United States
3   for more than 180-days after his original visa expires without being able to submit an application
4   to become a lawful permanent resident, he will be statutorily barred from ever seeking
5   adjustment of status and will be excluded from the United States for a period of three or ten
6   years.

7          Plaintiffs allege that CIS's policy of rejecting I-485 applications for adjustment of
8   status from religious workers unless and until the I-360 petition filed on their behalf has been
9   approved discriminates against certain classes of immigrants based on their religion and violates
10  the Religious Freedom Restoration Act ("RFRA"), the First Amendment, the Due Process
11  clause, and the Equal Protection clause.[2]  Plaintiffs seek summary judgment on their RFRA and
12  Equal Protection claims, while defendants seek summary judgment on all of the remaining
13  claims.

14                                          **DISCUSSION**

15  **A.  RELIGIOUS FREEDOM RESTORATION ACT ("RFRA"), 42 U.S.C. § 2000bb-1**

16         The Religious Freedom Restoration Act provides that the government "shall not
17  substantially burden a person's exercise of religion" unless it demonstrates that the regulation
18  furthers a compelling governmental interest and is the least restrictive means of furthering that
19  interest.  42 U.S.C. § 2000bb-1(a)-(b).  The fact that the burden on religion results from a rule of
20  general applicability will not save the regulation.  Plaintiffs maintain that CIS' policy of refusing
21  to accept concurrently-filed applications from religious workers substantially burdens their
22  exercise of religion.

23         "Under RFRA, a 'substantial burden' is imposed only when individuals are forced

24  _____

25      [2] Plaintiffs' claim that the policy against concurrent filing violates the governing statute, 8
    U.S.C. § 1255(a), was dismissed on appeal.  Ruiz-Diaz v. U.S., 618 F.3d 1055 (9th Cir. 2010).
26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 3

1  to choose between following the tenets of their religion and receiving a government benefit

2  (Sherbert [v. Verner, 374 U.S. 398 (1963)]) or coerced to act contrary to their religious beliefs

3  by the threat of civil or criminal sanctions ([Wisconsin v. Yoder, 406 U.S. 205 (1972)]).” Navajo

4  Nation v. U.S. Forest Serv., 535 F.3d 1058, 1069-70 (9th Cir. 2008).  Plaintiffs argue that the

5  rule against concurrent filing is a substantial burden on their exercise of religion because they

6  face detention, deportation, and statutory penalties if they continue to serve their congregations

7  after their nonimmigrant visas expire.  Motion (Dkt. # 141) at 14.  Plaintiffs’ argument is based

8  on a causal relationship that is tenuous at best.  Plaintiffs are subject to detention, deportation,

9  and statutory penalties not because they are following the dictates of their religion but because

10  their visas have expired.  Plaintiffs’ initial authorization to live and work in this country was for

11  a limited period of time.  At the expiration of the original visa, the alien is no longer welcome in

12  the United States and will, absent an extension or an adjustment of status, be separated from this

13  country and from the religious community he served while here.  The bar against concurrent

14  filing may make it more difficult for religious workers to obtain a timely adjustment of status,

15  but it is not the reason plaintiffs face detention, deportation, and statutory penalties.

16  Plaintiffs’ RFRA argument challenges the overall immigration scheme of the

17  United States, at least to the extent that the scheme relies on visas to control admission to and

18  residence in this country.  If plaintiffs’ argument is taken to its logical limits, whenever the

19  government attempts to expel a religious worker from the country it imposes a “substantial

20  burden” on the worker’s exercise of religion because expulsion would remove him from his

21  religious community and interfere with his practice of religion.  The Court is willing to assume,

22  for purposes of this motion, that a government policy that effectively takes a religious worker

23  out of his community or deprives a congregation of its choice of clergy imposes a “substantial

24  burden” on the exercise of religion.  Nevertheless, the Court finds that, at least in the

25  immigration context, such removals further a compelling government interest.  “[T]he power to

26

ORDER GRANTING DEFENDANTS’
MOTION FOR SUMMARY JUDGMENT – 4

exclude aliens is inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers . . . ." Kleindienst v. Mandel, 408 U.S. 753, 765 (1972) (internal quotation marks omitted).  Thus, controlling admission to the United States and the circumstances under which aliens may reside here is a compelling governmental interest.  The use of visas to grant temporary admittance, authorize certain stateside activities, and establish a departure date furthers that interest, and there is no indication in the record that the visa process, including the power to deport aliens who overstay their visas, is an overly restrictive means of achieving the government's purpose.

        If plaintiffs' argument is interpreted more narrowly so that it is not a challenge to the general immigration scheme but rather a challenge to the specific regulation at issue here, plaintiffs have failed to show that the bar against concurrent filing for religious workers independently imposes a substantial burden on plaintiffs' exercise of religion under Navajo Nation, 535 F.3d at 1069-70.  8 C.F.R. § 245.2(a)(2)(i)(B) specifies the relative timing for two applications for government benefits or approvals.  The delay in plaintiffs' ability to file a Form I-485 application does not compel plaintiffs to give up the tenets of their religion in order to receive the desired approvals, nor does it coerce plaintiffs to act contrary to their religious beliefs or face civil or criminal sanctions.[3]  Giving up one's religious practices would not improve the chances of obtaining adjustment of status or help the alien avoid deportation: in fact, abandoning the religious work on which the alien's admission was premised could preclude the requested relief.  According to the Ninth Circuit, the fact that a regulation may ultimately interfere with plaintiffs' ability to practice their religion or serve their religious community is "irrelevant" to the substantial burden analysis.  Snoqualmie Indian Tribe v. Fed. Energy Regulatory Comm'n, 545 F.3d 1207, 1214 (9th Cir. 2008).  As long as the bar against concurrent filing neither "forces

_____

        [3] The same can be said for the religious organizations that employ the individual plaintiffs.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 5

1  [plaintiffs] to choose between practicing their religion and receiving a government benefit [n]or

2  coerces them into a Catch-22 situation:  exercise of their religion under fear of civil or criminal

3  sanction," it does not impose a substantial burden under RFRA.  Id.

4          Because plaintiffs have not shown that the bar on concurrent filing imposes a

5  substantial burden on their free exercise of religion, the government need not show that the

6  regulation furthers a compelling government interest in the least restrictive manner.  Navajo

7  Nation, 535 F.3d at 1069.  While the immigration laws of this country, including the issuance of

8  time-limited visas, may ultimately prevent the individual plaintiffs from continuing to serve their

9  religious organizations after their visas expire, that burden furthers a compelling government

10 interest and satisfies the dictates of RFRA.

11 **B. EQUAL PROTECTION**

12         Plaintiffs argue that CIS has treated them differently from other immigrant groups

13 because they work for religious, rather than secular, organizations in violation of the Equal

14 Protection Clause.  Plaintiffs maintain that the Court must strictly scrutinize any law burdening

15 the practice of religion and argue that the bar against concurrent filing is not narrowly tailored to

16 further a compelling governmental interest.  Because this case involves Congress' plenary power

17 to control immigration and naturalization, strict scrutiny is not appropriate.  Masnauskas v.

18 Gonzales, 432 F.3d 1067, 1070-71 (9th Cir. 2005) (challenge to classification based on national

19 origin subject to rational basis test).[4]  "'Line-drawing' decisions made by Congress or the

20

21         [4] But see Gonzalez -Medina v. Holder, __ F.3d __, 2011 WL 1313026 at *2 (9th Cir. April 7,
   2011) ("Because Gonzalez-Medina does not allege discrimination on the basis of a suspect class, any
22 differential treatment violates equal protection only if it lacks a 'rational basis.'"); Abebe v. Mukasey,
   554 F.3d 1203, 1206 (9th Cir. 2009) ("We note at the outset that the statute doesn't discriminate against
23 a discrete and insular minority or trench on any fundamental rights, and therefore we apply a standard of
   bare rationality" to plaintiff's equal protection claim).  Although both cases suggest that something more
24 than a rational relationship might be required if a regulation discriminates on the basis of race, religion,
   sex, or national origin, neither case actually involved a suspect classification.  Nor did they
25 acknowledge or address Masnauskas' application of the rational basis test to a classification based on

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 6

1   President in the context of immigration and naturalization must be upheld if they are rationally

2   related to a legitimate government purposes." <u>Ram v. INS</u>, 243 F.3d 510, 517 (9th Cir. 2001).

3   Under the rational relation test, courts presume that immigration statutes and regulations are

4   constitutional. <u>Masnauskas</u>, 432 F.3d at 1071.  The person challenging the governmental action

5   has the burden of negating "every conceivable basis which might support it." <u>Heller v. Doe</u>, 509

6   U.S. 312, 320 (1993).  Even if the legislative ends could be better achieved through different

7   means, courts will accept the classification as long as it is rationally related to the government's

8   purpose. <u>Id.</u>

9          Defendants argue that, for purposes of the Equal Protection analysis, the treatment

10  of special immigrant religious workers should be compared only to the treatment of other

11  beneficiaries of the fourth visa preference category.  Even if that were true, defendants

12  acknowledge that some non-religious beneficiaries of the fourth preference category are allowed

13  to file concurrently while religious workers, special immigrant physicians, Iraqi/Afghani

14  translators, and Panama Canal workers are not.  Thus, even within the fourth preference

15  category, religious workers are treated less favorably than others within that category.

16          For purposes of this motion, the Court assumes that special immigrant religious

17  workers are treated differently than other similarly-situated aliens.  Nevertheless, the Court finds

18  that the bar against concurrent filing is rationally related to the agency's purpose of deterring

19  fraud in an area where there are virtually no objective standards for determining a religious

20

21  ─────────────

22  nationality which, like those based on race or sex, is inherently suspect. <u>See</u> <u>Graham v. Richardson</u>, 403
    U.S. 365, 372 (1971).  The Ninth Circuit generally recognizes that the political branches of government
23  have broad and sweeping authority to control "admission, exclusion, removal, naturalization, [and] other
    matters pertaining to aliens," and the Supreme Court has held that classifications which would be
24  unacceptable if applied to citizens do not violate equal protection in the immigration context.  <u>Abebe</u>,
    554 F.3d at 1206; <u>Fiallo v. Bell</u>, 430 U.S. 787, 792-96 (1977).  Given the level of deference the
25  judiciary must afford the judgments of the legislative and political branches in this area, the Court finds
    that strict scrutiny is not appropriate even where a suspect classification has been used.
26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 7

organization's need or for evaluating whether a particular applicant is qualified to fill an available position.  Government assessments have shown that fraud is a concern in the religious worker visa program, and Congress has indicated that CIS needs to address the problem through regulation.  U.S. Government Accountability Office Report, Immigration Benefits: Additional Controls and a Sanctions Strategy Could Enhance DHS's Ability to Control Benefit Fraud (Dkt. # 9, Ex. D, at 16-17); Special Immigrant Nonminister Religious Program Act, Pub. L. No. 110-391, 122 Stat. 4193, 4193-94 (2008).  Although the parties disagree regarding the degree of fraud in the program and/or whether it exceeds the degree of fraud in other visa preference categories, reducing fraud is obviously a concern to the agency regardless of its comparative prevalence.

Reducing fraud in a government benefits program is a legitimate government purpose.  Prohibiting the concurrent filing of I-360 petitions and I-485 applications may not be the best means toward that end, but the two are rationally related.  By requiring religious organizations to file the I-360 petition first, CIS gives itself a period of time in which to investigate the bona fides of the requesting religious organization and the prior work history of the beneficiary before the alien obtains an extension on his residency, employment, and travel authorizations.  The bar on concurrent filings is a rational regulatory attempt to reduce fraud in the religious worker program.[5]  Given the government's legitimate interest in reducing fraud and the broad deference courts show the determinations of the political branches in the context of immigration, the bar on concurrent filings withstands scrutiny under the Equal Protection Clause.

---

[5]  The fact that CIS has made other efforts to reduce fraud, such as imposing heightened documentation requirements, conducting site visits, and reviewing the employer's tax status, does not mean that the bar on concurrent filing is not a rational means toward that same end.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 8

**C. DUE PROCESS**

Defendants seek dismissal of plaintiffs' due process claim on the ground that plaintiffs are not entitled to file their adjustment of status applications before CIS approves the employers' visa petitions and therefore have no substantive interest protected by the Due Process Clause.  Plaintiffs argue that they are, in fact, statutorily eligible to apply for adjustment of status (even if the decision to grant or deny the application is discretionary) and that the government should not be allowed to deprive them of the chance to apply simply by delaying consideration of the Form I-360 petition.

The Ninth Circuit has rejected plaintiffs' argument that they are statutorily entitled to apply for adjustment of status before CIS approves the employer's visa petition.  The Ninth Circuit found that the statute "is silent regarding when visa petitions and applications for adjustment of status may be accepted and processed in relation to each other" and that the statute does not prohibit consecutive filing.  Ruiz-Diaz, 618 F.3d at 1060-61.  Thus, the agency could, consistent with the statute, require that the applicant obtain a visa before submitting his Form I-485 application.  Plaintiffs argue, however, that the bar against concurrent filing effectively deprives class members of their ability to request adjustment of status if the agency delays processing the visa petition.  How this problem creates a due process concern is not clearly stated.

Citing Ex Parte Hull, 312 U.S. 546, 548-49 (1941), plaintiffs suggest that any regulation which impairs or abridges plaintiffs' right to apply to the government for relief is invalid.  Ex Parte Hull involved a regulation that impaired a prisoner's right to access the courts: the offending regulation mandated that prison officials review and approve all court submissions before they could be filed.  The Supreme Court invalidated the regulation on the grounds that the state and its officers could not interfere with the submission of a writ of habeas corpus and that the courts, not the state, had the power to determine whether the petition was properly drawn.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 9

1    Mr. Hull's constitutional privilege of the writ of habeas corpus and right of access to the courts

2    were uncontested.  In this case, the Ninth Circuit has already determined that plaintiffs have no

3    statutory, much less constitutional, right to apply for adjustment of status until after they obtain a

4    visa.  Plaintiffs therefore have no life, liberty, or property interest in concurrent filing to which

5    the protections of the Due Process Clause could attach.

6                  Plaintiffs also suggest that defendants have violated the Due Process Clause

7    whenever they "excessively delayed adjudication of I-360 petitions," thereby rendering the

8    applicant ineligible for adjustment of status.  Plaintiffs' Reply and Response (Dkt. # 146) at 6-7.[6]

9    Even if the Court assumes that CIS unreasonably delayed the adjudication of certain I-360

10   petitions, the remedy sought – namely, the invalidation of 8 C.F.R. § 245.2(a)(2)(i)(B) – would

11   not be appropriate.  The bar against concurrent filing did not cause or otherwise give rise to the

12   excessive delay about which plaintiffs now complain.  If plaintiffs have a right to faster

13   adjudication of the Form I-360 petitions, they should seek to enforce that right in the few

14   instances where it has been violated rather than attempting to invalidate an otherwise reasonable

15   procedural regulation.

16                 Other than their assertion that 8 U.S.C. §1255(a) gives them a right to concurrently

17   file, plaintiffs have not identified any other source of an entitlement to have their Form I-485

18   application accepted before a Form I-360 visa issues.  Plaintiffs argue that 8 C.F.R.

19   § 245.2(a)(2)(i)(B) improperly interferes with congressional intent because Congress meant to

20   create a mechanism through which aliens could apply for permanent residence status without

21   having to leave the country.  Plaintiff's Reply and Response (Dkt. # 146) at 4.  But Congress

22   _____

23          [6]  Plaintiffs identify a handful of special immigrant religious workers who experienced
     significant and injurious delays in the adjudication of their I-360 petitions.  Plaintiffs' Reply and
24   Response (Dkt. # 146) at 15.  Whether a class action is the appropriate mechanism to handle these delay
     claims has not been decided by the Court:  the class certified on June 30, 2008, is comprised of all
25   individuals who were precluded from concurrent filing, regardless of the length of the delay in resolving
     the Form I-360 petition.
26
     ORDER GRANTING DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT – 10

1   also conferred on the Attorney General discretion to regulate the process of adjusting status,

2   including the relative timing of the applications.  Ruiz-Diaz, 618 F.3d at 1061.  One of the

3   regulations the agency issued requires special immigrant religious workers to have an approved

4   visa petition in hand before applying for adjustment of status, a requirement which the Ninth

5   Circuit upheld as consistent with the statute.  Absent a legitimate entitlement to apply for

6   adjustment of status before obtaining CIS approval of the I-360 visa petition, no process is

7   constitutionally mandated.  Plaintiffs' due process claim therefore fails as a matter of law.

8   **D. FIRST AMENDMENT**

9           The parties agree that the threshold for proving a RFRA violation is lower than

10  that required to prove a violation of the First Amendment.  For the reasons discussed in Section

11  A above, plaintiffs' First Amendment claim fails as a matter of law

12                              **CONCLUSION**

13          For all of the foregoing reasons, plaintiffs' motion for summary judgment (Dkt.

14  # 141) is DENIED and defendants' cross-motion for summary judgment (Dkt. # 145) is

15  GRANTED.  The Clerk of Court is directed to enter judgment in favor of defendants and against

16  plaintiffs.

17

18          Dated this 10th day of May, 2011.

19

20                                  Robert S. Lasnik
                                    United States District Judge

21

22

23

24

25

26
    ORDER GRANTING DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT – 11